Argued and submitted April 21, reversed and remanded for reconsideration
September 13, 1995

In the Matter of the Compensation of
Floyd B. Talley, Jr., Claimant.

WEYERHAEUSER COMPANY,
*Petitioner,*

*v.*

Floyd B. TALLEY, Jr.,
Menashe Paperboard, SAIF Corporation,
Menashe Corporation, and
Employers Insurance of Wausau,
*Respondents.*

(WCB 93-08692, 93-06477, 93-07900; CA A86143)

902 P2d 626

John M. Pitcher argued the cause and filed the brief for petitioner.

Ralph E. Wiser III argued the cause for respondent Floyd B. Talley, Jr. With him on the brief was Bennett & Hartman.

David O. Horne argued the cause and filed the brief for respondent Employers Insurance of Wausau.

Steven R. Cotton, Special Assistant Attorney General, argued the cause for respondents SAIF Corporation, Menashe Paperboard and Menashe Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Employer seeks review of a Workers' Compensation Board order that held that claimant's hearing loss was compensable. Claimant seeks sanctions against employer for filing a frivolous request for review. ORS 656.390. We reverse the Board's order and deny the request for sanctions.

Claimant has worked in employer's paper mill since 1963. Until 1981, the mill was owned by Menashe Corporation. In 1981, employer purchased the mill, and claimant continued to work there. At the mill, he was exposed to loud noise. In 1971, claimant's hearing was tested. The test showed normal hearing in his right ear and an 11 percent hearing loss in his left ear. His hearing was next tested in 1979. That test showed a 3.8 percent hearing loss in the right ear and a 20 percent loss in the left ear. In January 1992, claimant sought treatment for the hearing loss. In 1993, he was examined by Dr. Hodgson, an otolaryngologist. Hodgson noted that the hearing loss in claimant's right ear had slightly progressed since 1979 over and above what would be expected from the natural aging process alone, and that the hearing in claimant's left ear had remained stable since 1979.

Claimant filed a workers' compensation claim, which employer denied. Claimant sought a hearing, and the referee concluded that the hearing loss was compensable as an occupational disease that was caused in major part by occupational noise exposure. *See* ORS 656.802.[1] The Board adopted and affirmed the referee's order with supplementation. It said:

> "We rely on Dr. Hodgson's opinion regarding causation * * *. Accordingly, based on Dr. Hodgson's opinion, we agree with the Referee that claimant has established that his 30-year noise exposure at work was the major contributing cause of his bilateral hearing loss."

Employer seeks review. We affirm without discussion its challenge to the Board's determination that the claim is not time barred. Employer also assigns error to the Board's conclusion that the claim is compensable. It argues that the Board misread Hodgson's opinion. According to employer,

---

[1] The 1995 amendments to ORS 656.802 do not affect this case. Or Laws 1995, ch 332, § 56.

Hodgson's report, on which the Board relied, does not support the finding that work was the major contributing cause of claimant's hearing loss over 30 years. Claimant responds that there is substantial evidence in the record to support the Board's finding.

Four experts provided evidence of causation in this case. The referee discussed each expert's testimony. The Board, however, relied exclusively on Hodgson's opinion in reaching its conclusion. We agree with employer that the Board misread Hodgson's opinion. In his initial letter report, Hodgson said that "[t]he type of hearing loss seen in this case is quite typical of that due to excessive noise exposure." He noted that claimant had been exposed to noise at work as well as to noise while engaged in his hobby of shooting guns. He concluded that the hearing loss suffered between 1971 and 1979 was due to occupational noise exposure. He then said:

> "When comparing his activities of shooting guns throughout his entire lifetime with his work-related activities of full-time work for thirty years in a paper mill, then in my view, the work-related noise exposure represents more than 51% of [claimant's] total lifetime noise exposure.
>
> "It is my opinion, that the major contributing factor in this gentleman's hearing loss is occupational noise exposure."

Later, however, Hodgson clarified his opinion. In a May 26, 1993, letter, as corrected by a June 11, 1993, letter, he said:

> "To state my opinions more clearly, * * * I feel that [claimant] clearly had an increase in hearing loss between 1971 and 1979 in both ears directly related to occupational noise exposure. However I do not see clear evidence of occupational hearing loss from 1979 to the present time. Although there has been a slight progression of hearing loss in the right ear since 1979, I can not conclusively determine whether this is related to the natural effects of aging or other factors, including the possibility of occupational damage. However overall I feel that [claimant's] hearing loss since 1979 can not be determined to be occupationally related based on reasonable medical probability. .
>
> "In addition there has not been any hearing loss noted between 1981 and 1993 that can be attributed to occupational factors on a more probable than not basis."

Further, in response to a written question from claimant's attorney, Hodgson responded:

"Industrial noise exposure was the major contributing factor to the worsening of hearing loss between 1971 and 1979. I am unable to determine the major contributing factor of hearing loss before 1971 and after 1979 to a reasonable medical probability."

Based on those statements, it is apparent that Hodgson's opinion is that hearing loss between 1971 and 1979 of 9 percent in the left ear and 3.8 percent in the right ear was caused by occupational exposure, but that he cannot determine whether hearing loss before or after that period was caused by occupational exposure. It appears that the Board misread Hodgson's reports, because it concluded that they established that claimant's "30-year noise exposure at work was the major contributing cause of his bilateral hearing loss." That finding is not supported by a proper reading of all of Hodgson's reports. There was, however, other evidence in the record, on which the referee relied, that could support the Board's finding of compensability. Accordingly, we remand for reconsideration. *See Skochenko v. Weyerhaeuser Co.*, 118 Or App 241, 846 P2d 1212 (1993); *Asten-Hill Co. v. Armstrong*, 100 Or App 559, 787 P2d 890 (1990).[2]

Because of our disposition of employer's assignment of error challenging compensability, we need not address its assignment regarding responsibility. We deny claimant's request for sanctions under ORS 656.390.

Reversed and remanded for reconsideration. Request for sanctions denied.

---

[2] Claimant argues that, because Hodgson's opinions support a finding that work was the major contributing cause of his hearing loss between 1971 and 1979, he has established the compensability of his claim for hearing loss, and that employer's arguments go to the extent of disability rather than to compensability. The Board did not find that work was the major contributing cause of claimant's hearing loss between 1971 and 1979; it found that claimant's hearing loss was caused in major part by his 30-year noise exposure at work. Thus, the issue of whether the claim might be compensable because part of claimant's hearing loss was caused by work is not raised by the Board's order, and we express no opinion about that.